IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br> v. <br><br> THOMAS FRANCIS HALE, <br><br> Defendant. | MEMORANDUM DECISION AND ORDER DENYING MOTION FOR RELEASE PENDING APPEAL <br><br> Case No. 2:06-cr-871-DN <br><br> District Judge David Nuffer |

After a four day trial in January 2013, a jury found Defendant Thomas Francis Hale guilty[1] on all three counts of the second superseding indictment.[2] After granting Hale's motion to continue his sentencing hearing[3] from May 29, 2013 until June 28, 2013, the court sentenced Hale to a term of 27 months in prison and Hale began serving that sentence on or about August 17, 2013.[4] Hale's newly retained counsel entered an appearance in the case on September 24, 2013[5] and subsequently filed Hale's fourth motion for release pending appeal.[6] Hale asks the court to "release him pursuant to 18 U.S.C. § 3143 until the appeal of this matter is decided."[7]

---

[1] Jury Verdict, docket no. 293, filed Jan. 25, 2013.

[2] Superseding Indictment, docket no. 230, filed November 9, 2012. *See also* Docket Text Order granting 248 Motion to Strike Second and Third Allegations in Count 1 of the Superseding Indictment, docket no. 271, filed Jan. 15, 2013.

[3] Docket Text Order granting 322 Motion to Continue Sentencing, docket no. 323, filed May 16, 2013.

[4] Minute Entry of Sentencing Hearing, docket no. 341, filed June 28, 2013; Judgment, docket 343, filed July 3, 2013; Amended Judgment, docket 360, filed July 11, 2013.

[5] Docket Text Order granting Motion for Admission Pro Hac Vice of J. Alex Little, docket no. 400, filed Sept. 24, 2013.

[6] Defendant's Motion for Release Pending Appeal (Motion for Release), docket no. 401, filed Nov. 12, 2013. Previously filed motions include: Motion for Release Pending Appeal, docket no. 367, filed Aug. 4, 2013 (withdrawn by Hale on Aug. 12, 2013, docket no. 375); Motion for Release Pending Appeal, docket no. 381, filed Aug. 14, 2013 (denied Aug. 16, 2013, docket no. 389); Supplimental [sic] Motion for Release Pending Appeal, docket no. 382, filed Aug. 14, 2013 (denied Aug. 16, 2013, docket no. 389).

[7] Motion for Release at 1.

Hale claims his appeal involves "substantial questions of law and fact that likely will result in reversal of his conviction and an order for a new trial."[8] The United States opposes the motion, asserting that Hale has failed to meet his burden to show a substantial question on appeal that is "likely to result in reversal, a new trial, or a lower sentence, as required under 18 U.S.C. § 3143(b)."[9] After careful consideration of all the filings, the pertinent statutes and caselaw, the motion for release pending appeal is DENIED for the reasons discussed below.

## DISCUSSION

Release pending appeal by a defendant is governed by 18 U.S.C. § 3143(b)(1), and provides:

> [T]he judicial officer shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained, unless the judicial officer finds –
> (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and
> (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in –
> (i) reversal,
> (ii) an order for a new trial,
> (iii) a sentence that does not include a term of imprisonment, or
> (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.[10]

Both parties agree that Hale meets the first requirement under subsection (A), that he does not pose a risk of flight or a danger to the community.[11] Hale argues that he also meets the requirements of subsection (B) because his appeal "involve[s] substantial questions of law and

---

[8] *Id.*

[9] Response in Opposition to Defendant's Fourth Motion for Release Pending Appeal (Opposition) at 1, docket no. 405, filed Dec. 6, 2013.

[10] U.S.C. § 3143(b).

[11] Memorandum in Support of Defendant's Motion for Release Pending Appeal (Memo in Support) at13, docket no. 402, filed Nov. 12, 2013; Opposition at 4 ("the United States concedes that Defendant does not pose a risk of flight or danger to the community").

fact that likely will result in reversal of his conviction and an order for a new trial."[12] The United States argues that Hale has not met this burden.

The Tenth Circuit first interpreted 18 U.S.C. § 3143(b)(1)(B) in *United States v. Affleck*[13] and followed the two-step analysis announced in *United States v. Miller*[14] but applied a stricter standard than Miller when determining what constitutes a substantial question of law or fact.[15] When applying the two-step analysis:

> First, the court must decide that the appeal raises a "substantial" question of law or fact. Second, "if that substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal or an order for a new trial of all counts on which imprisonment has been imposed."[16]

The *Affleck* court went on to describe what constitutes a substantial question under the first step of the test, noting that "[t]he new Act was intended to reverse the presumption in favor of bail pending appeal under the former law and to make the standards for granting bail pending appeal more stringent."[17] The court stated that "'a 'substantial question' is one of more substance than would be necessary to a finding that it was not frivolous. It is a 'close' question or one that very well could be decided the other way.'"[18] The court cautioned that under these guidelines, determining whether a question is "substantial" must be done on a case-by-case basis.[19]

---

[12] Motion for Release at 1.

[13] 765 F.2d 944 (10th Cir. 1985) (en banc).

[14] 753 F.2d 19 (3d Cir. 1985).

[15] *Affleck*, 765 F.2d at 952.

[16] *Id.* (quoting *Miller*, 753 F.2d at 24).

[17] *Id.* (citing S.Rep.No. 225, 98th Cong., 1st Sess. 26-27, *reprinted in* 1984 U.S.Code Cong. & Ad.News 3182).

[18] *Id*. (quoting *United States v. Giancola*, 754 F.2d 898, 901 (11th Cir.1985)).

[19] *Id.*

Under the second step of the test, the *Affleck* court adopted the analysis in *Miller*, explaining that the statutory language

> "must be read as going to the significance of the substantial issue to the ultimate disposition of the appeal. A question of law or fact may be substantial but may, nonetheless, in the circumstances of a particular case, be considered harmless, to have no prejudicial effect, or to have been in-sufficiently preserved. A court may find that reversal or a new trial is 'likely' only if it concludes that the question is so integral to the merits of the conviction on which defendant is to be imprisoned that a contrary appellate holding is likely to require reversal of the conviction or a new trial."[20]

The statute places the burden on the convicted defendant to prove that he meets all the criteria for release on bail pending appeal.[21] This framework is used to review the claims Hale raises in his motion.

## Count 1 – False Bankruptcy Oath

Hale alleges that his "conviction for testifying falsely under oath in a bankruptcy proceeding rests on multiple errors[:]"[22] the indictment failed to allege a false statement or materiality; the alleged false statement was not material; the court failed to require the United States to negate any reasonable basis for Hale's property valuation; and the jury instructions were ambiguous.

1. Indictment

Hale argues that the indictment failed to allege a false oath because did not "allege *any* connection between the Trustee's questions and the Schedule A on which the defendant 'had listed' his good-faith estimate of the value of his property, it failed to demonstrate the falsity of the statements it alleged were false."[23]

---

[20] *Id.* at 953 (quoting *Miller*, 753 F.2d at 23).

[21] *Id.* at 946.

[22] Memo in Support at 15.

[23] *Id.* at 16.

4

"An indictment is sufficient if it sets forth the elements of the offense charged, puts the defendant on fair notice of the charges against which he must defend, and enables the defendant to assert a double jeopardy defense."[24] United States asserts the indictment was sufficient because it specifically outlined the false oath, alleged that it was made in a case under Title 11, specifically described the false statements, provided the date the statements occurred, stated to whom the statements were made, and alleged why the statements were false.[25] Clearly, the indictment in this case sufficiently meets all the requisite criteria: it contained the elements of the offense charged under 18 U.S.C. § 152(2);[26] provided Hale fair notice of the charges against him; and "was specific enough to provide double jeopardy protection."[27]

Under the Federal Rules of Criminal Procedure, any attack on a defect in the indictment must be raised by motion before trial.[28] Although Hale filed a motion to dismiss the indictment early in the case,[29] that motion was dismissed without prejudice because Hale impermissibly made the motion himself while he was represented by counsel.[30] Hale's trial counsel never filed a motion attacking the indictment.

---

[24] *United States v. Dashney*, 117 F.3d 1197, 1205 (10th Cir. 1997).

[25] Opposition at 7. *See also* Superseding Indictment at 1-3.

[26] Superseding Indictment at 2 ("knowingly and fraudulently made a material false statement under oath in and in relation to a case under Title 11").

[27] *United States v. Brown*, Nos. 98-2169, 98-2205, 1999 WL 569052 at *2 (10th Cir. 1999) (unpublished) (citing *Dashney*, 117 F.3d at 1205).

[28] Fed. R. Crim. P. 12(b)(3)(B) (stating "a motion alleging a defect in the indictment" must be made before trial).

[29] Docket no. 74, filed Mar. 20, 2008.

[30] *See* Memorandum Decision and Order Denying Defendant's Motions Without Prejudice, docket no. 78, filed Mar. 24, 2008.

Hale's current attack on the indictment does not raise a claim that the indictment fails to state an offense,[31] but argues that the indictment needed to be more factually specific.[32] "Such claims cannot be raised for the first time at this late date."[33]

2. Materiality of the False Statement

Hale also claims that his alleged false oath was not material and the jury was not properly instructed on materiality limitations. Hale argues that "a false statement in bankruptcy proceeding is not material if it relates to assets having little or no value, constitutes a minor error or deviation, or has no impact on a bankruptcy case."[34] In this case, however, the materiality of the false statement was clearly outlined in the indictment,[35] the statement related to a valuable asset, and the statement was not a minor error.

"The subject matter of a false oath is 'material' . . . if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property."[36] Hale's false oath regarding the valuation of the Salt Lake property related to his bankruptcy estate and concerned the existence and disposition of his property, making the false statement material. A jury instruction on materiality

---

[31] Fed. R. Crim. P. 12(b)(3)(B) ("at any time while the case is pending, the court may hear a claim that the indictment or information fails to invoke the court's jurisdiction or state an offense").

[32] *See* Memo in Support at 17.

[33] *Brown*, 1999 WL 569052 at *3 (citing *United States v. Brown*, 164 F.3d 518, 521 & n.3 (10th Cir.1998) (refusing to reach challenge to specificity of indictment not raised at trial)).

[34] Memo in Support at 20-21 (citing *In re Wills*, 243 B.R. 58, 62 (B.A.P. 9th Cir. 1999)) (internal quotations, citations and alterations omitted).

[35] Superseding Indictment at 3 ("Defendant made the foregoing false declarations knowing full well . . . [h]is real property at 1989 South 1000 East, Salt Lake City, Utah, had a value in excess of $190,000 as he had listed on Schedule A of his Schedules of Assets and Liabilities.").

[36] *In re Chalik*, 748 F.2d 616, 618 (11th Cir. 1984), *cited with approval in In re Calder*, 907 F.2d 953, 955 (10th Cir. 1990); *see also In re Wills*, 243 B.R. at 62.

limitations was unnecessary because there was not a minor error or deviation in the valuation in this case and the jury was properly instructed on what constitutes a material fact.[37]

    3. Negate any Reasonable Basis for Hale's Property Valuation

Hale next claims that "the Court erred by failing to require the government to negate any reasonable basis for [his] estimate of his property's 'Market Value.'"[38] Hale asserts that this burden fell to the United States "because the only reporting requirement at issue in Count One was the defendant's duty as a debtor to offer a good-faith opinion of the estimated 'Market Value' of the real property at issue."[39] To support this argument, Hale relies upon a statement in *United States v. Migliaccio*:[40] "the government bears the burden to negate any reasonable interpretations that would make a defendant's statement factually correct."[41] However, when the complete sentence in the case is read, it becomes clear that this statement is limited to cases arising under a completely different statute and in relation to ambiguous reporting requirements: "*In cases arising under 18 U.S.C. § 1001*, which criminalizes making false statements to a government agency, the government bears the burden to negate any reasonable interpretations that would make a defendant's statement factually correct *where reporting requirements are ambiguous.*"[42]

---

[37] Jury Instruction 28, docket no. 294, filed Jan. 25, 2013 ("A material fact is one which relates to the extent and nature of the debtor's assets, or the business or financial transactions of the debtor, or to the discovery of assets, or to statements designed to secure an adjudication of bankruptcy. A material fact refers not only to the main fact which was the subject of the inquiry, but to any fact or circumstance which tends to corroborate or strengthen the proof introduced to establish the main fact.").

[38] Memo in Support at 25.

[39] *Id.*

[40] 34 F.3d 1517 (10th Cir. 1994).

[41] *Migliaccio*, 34 F.3d at 1525.

[42] *Id.* (referring to the ambiguity of government reporting requirements in the Civilian Health and Medical Program of the Uniformed Services (CHAMPUS) (emphasis added)).

In this case, the requirements on property valuation for bankruptcy were not ambiguous and only required Hale to be truthful on his valuations in his bankruptcy filings. The United States presented strong evidence showing that Hale knew he had under-reported the value of the property, and showed that Hale's valuation was unreasonable. First, the tax notice Hale received prior to his October 2005 initial bankruptcy filing showed a 2005 property valuation of $268,900,[43] not the 190,000 market value listed in his bankruptcy filing.[44] Additionally, Hale's own filing in the bankruptcy case shows that he knew the value of the Salt Lake property in November 2005 – just a month after Hale's initial bankruptcy filing:

> 6. In November of 2005 it was my intention to once again refinance the Salt Lake City property to pay of all the outstanding Deeds on all the properties.
>
> 7. The property in Salt Lake City, I hoped, would have retired all the outstanding Deeds, because the property would have refinance for at least $350,000, as we all know now.[45]

Therefore, even though the prosecution was not required to negate any reasonable basis for Hale's valuation, this evidence showed that Hale's valuation was indeed unreasonable.

4. Jury Instructions on Issue of Time Frame

For his last point in his challenge to Count 1, Hale contends "the Court's instructions to the jury were so ambiguous and equivocal on the basic issue of the time-frame at issue that they were erroneous."[46] Hale continues to claim that the relevant time frame at issue was October 26,

---

[43] 2006 Notice of Property Valuation and Tax Change, exhibit no. 26.

[44] *See* Statement of Financial Affairs, Schedule A, exhibit no. 2.

[45] Offer of Proof to Abandon Properties at 2, *In re Tom Hale*, No. 05-39359 (Bankr. D. Utah Nov. 15, 2006), exhibit 35.

[46] Memo in Support at 29.

2005, when he entered the market value of the property as $190,000 on the Schedule A of his bankruptcy petition.[47]

A complete reading of the jury instruction shows that it was clear, unambiguous, and follows the wording from the indictment as to Count 1. First, the time frame for the false statements under oath in the bankruptcy case is given as August 22, 2006.[48] It goes on to describe his false statements that the information contained in his bankruptcy filings, including the petition, statements, schedules and related bankruptcy documents was true, complete and accurate; and he needed to make no changes or amendments.[49] Finally, the jury instruction described that Hale made these statements knowing that "[h]is real property . . . had a value in excess of $190,000 as he had listed on Schedule A of his Schedules of Assets and Liabilities."

Although Hales continues to argue his theory of the case regarding the time frame, which was also given as a jury instruction,[50] the United States presented evidence that Hale actually provided false statements on both dates, in October 2005 when he filed the Schedule A[51] and in August 2006 when he reaffirmed that filing to the bankruptcy trustee. Thus, as instructed, the jury could reasonably find Hale guilty of the reaffirmation (in August 2006) of the original false valuation (in October 2005) under Count 1. The time frame for Count 1 was not ambiguous in

---

[47] *Id.*

[48] Jury Instruction 24, docket no. 294 ("on or about August 22, 2006, in the Central Division of District of Utah, Defendant Thomas Francis Hale, knowingly and fraudulently made material false statements under oath in and in relation to a case under Title 11").

[49] *Id.* ("Question: To the best of your knowledge and belief is the information contained in your petition, statements, schedules and related bankruptcy documents true, complete and accurate? Answer: Yes, Ma'am. Question: Are you aware of any changes or amendments that need to be made? Answer: No, Ma'am.").

[50] Jury Instruction 32, docket no. 294 ("Mr. Hale's theory of the case is that these statements refer to whether or not the value of the house was correct on the date the petition was filed in October of 2005.").

[51] *See* 2006 Notice of Property Valuation and Tax Change, exhibit no. 26 (showing property value of 268,000) and Offer of Proof to Abandon Properties at 2, *In re Tom Hale*, No. 05-39359 (Bankr. D. Utah Nov. 15, 2006), exhibit 35 (stating Hale knew he could refinance the property for $350,000).

the jury instructions. Further, the jury was properly instructed as to Count 1[52] and on Hale's theory of the case.[53]

Hale has not presented a substantial question under Count 1 that likely will result in reversal of his conviction.

### Count 2 – Concealing Assets of the Bankruptcy Estate

Hale claims that he raises a substantial question as to Count 2 when he asserts "the Court erred when it failed to grant [his] motion for judgment of acquittal on the ground that the real estate contract at issue in the case did not constitute 'property belonging to the estate of a debtor' under 18 U.S.C. § 152(1)."[54] After argument on this issue at trial outside of the presence of the jury,[55] receiving additional briefing from the United States,[56] and doing additional research,[57] the court determined to allow the issue to go to the jury, reserving a final determination on the issue.[58] After the jury returned guilty verdicts on all counts, the court denied the motion "finding that a rational jury could find (and has found) Mr. Hale guilty beyond a reasonable doubt on all counts and the verdict is supported by substantial evidence."[59]

---

[52] Jury Instruction 24, docket no. 294.

[53] Jury Instruction 32, docket no. 294 ("Mr. Hale's theory of the case is that these statements refer to whether or not the value of the house was correct on the date the petition was filed in October of 2005.").

[54] Memo in Support at 31.

[55] Trial Tr. vol. III, 620-23 Jan. 24, 2013, docket no. 326, filed May 28, 2013.

[56] Memorandum in Support of Denial of Defendant's Rule 29 Motion, docket no. 287, filed January 24, 2013.

[57] Trial Tr. vol. IV, 636-37 Jan. 25, 2013, docket no. 330, filed June 3, 2013.

[58] *Id.*

[59] Docket Text Order, docket no. 295, filed Jan. 30, 2013 (citing *U.S. v. Irvin*, 682 F.3d 1254, 1266 (10th Cir. 2012)).

Hale continues to question "whether the 'purchase agreement' charged in the indictment[60] qualified as 'property belonging to the estate of a debtor' for purposes of the criminal statute prohibiting concealment of assets in bankruptcy."[61] The bankruptcy code defines property of an estate:

> [An] estate is comprised of all the following property, *wherever located and by whomever held*: . . . all legal or equitable interests of the debtor in property as of the commencement of the case. . . . Proceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case. [And] [a]ny interest in property that the estate acquires after the commencement of the case.[62]

Hale argues that "none of the specific terms in these statutes can be read to encompass the alleged 'property' charged in the indictment"[63] because the sales contract was void and never resulted in a transfer of money or property.[64]

Hale relies on *In re Grotjohn*[65] to support his argument that the contract to transfer estate property was void. In *Grotjohn*, the debtor transferred an interest in his state litigation claims to a third-party in exchange for payment of attorneys' fees he had incurred in the state litigation.[66] The Chapter 7 trustee for the debtor's estate sought to recover the money paid for the claims as proceeds of the estate because the claims were property of the estate at the time of the transfer.[67]

---

[60] *See* Superseding Indictment at 3 ("defendant . . . did knowingly and fraudulently conceal from creditors of the bankruptcy estate of Tom Hale and the panel trustee in bankruptcy, a purchase agreement for $395,000 for the real property . . . [in] Salt Lake City, Utah, belonging to the bankruptcy estate of Tom Hale. All in violation of 18, U.S.C. § 152(1).").

[61] Memo in Support at 32 (citations omitted).

[62] 11 U.S.C. § 541(a)(1), (6)-(7) (emphasis added).

[63] Memo in Support at 33.

[64] *Id.*

[65] *In re Grotjohn*, 289 F. App'x 702 (5th Cir. 2008) (per curiam) (unpublished).

[66] *Id.* at 703.

[67] *Id.* at 703-04.

On appeal, the Fifth Circuit affirmed the lower court[68] finding that there was no transfer of estate property in the first instance because the "claims were undeniably property of the estate, not the [d]ebtor, when the [d]ebtor purported to transfer an interest in them to [the third-party]."[69] The court determined that the money received for the interest in the claims could not qualify as proceeds of the estate because there was never a transfer of estate property: the transfer of an interest in the claims by the debtor was void *ab initio*.[70] The court concluded,

> [i]n the context of the discrete facts of this case, the Debtor never had the legal power or authority to transfer the legal claims at issue, which were the property of the estate. Therefore, no transfer of estate property occurred, so the Transferred Money could not have been, and was not, "proceeds . . . of or from property of the estate" under § 541(a)(6).[71]

This case and the others cited by Hale, indicate that transfers of estate assets without the knowledge of the bankruptcy trustee or in violation of the bankruptcy stay are void. Yet courts have also held that post-petition transfers are not void, but voidable when relief is available to cure the violation.[72] "The Tenth Circuit has repeatedly ruled that actions taken in violation of the stay are void *ab initio*, not merely voidable."[73] But there is one notable exception to this Tenth Circuit rule found in the case of *In re Calder*.[74] In that case, the debtor Calder actively litigated a state court action without providing notice of his bankruptcy filing.[75] After a judgment was entered against him in the state court action, Calder claimed the judgment was void because he

---

[68] *Id.* at 704 (bankruptcy court dismissed trustee's adversary complaint and district court affirmed).

[69] *Id.* at 705.

[70] *Id.*

[71] *Id.*

[72] *In re Siciliano*, 13 F.3d 748, 751 (3d Cir. 1994). *See also Maritime Elec Co. v. United Jersey Bank*, 959 F.2d 1194, 1207 n.11 (3d Cir. 1991) (noting courts rely on 11 U.S.C. § 362(d) to cure acts that are otherwise void under the automatic stay).

[73] *In re Beery*, 452 B.R. 825, 834 (Bankr. D. N.M. 2011) (citing list of cases).

[74] *In re Calder,* 907 F.2d 953 (10th Cir. 1990).

[75] *Id.* at 956.

had been in bankruptcy all along.[76] Under these circumstances, the Tenth Circuit refused to enforce the stay, finding "it would be inequitable to allow Calder to claim any protections of the automatic stay under section 362(a) to defeat the [] state court judgment. . . . To hold otherwise and permit the automatic stay provision to be used as a trump card played after an unfavorable result was reached in state court, would be inconsistent with the underlying purpose of the automatic stay."[77] Just as a debtor may not claim protection of a bankruptcy stay to avoid a judgment he voluntarily litigated, Hale may not now claim that the purchase agreement he personally negotiated was void *ab initio* as a shield to protect him from his criminal acts of bankruptcy concealment. "Particularly is that the case here where an out-of-possession (chapter 7) debtor has acted to cause so much mischief for so many parties."[78] At least one bankruptcy court has noted that "*Calder* provides sufficient support for dealing with the one-off case in which a debtor has . . . so misled a party or gamed the system that a rigid application of the principle that violations of the stay are 'void' would be unfair."[79]

The equitable principle set forth in *Calder* certainly applies here to prevent Hale from further attempts to "game[] the system."[80] Even if Hale somehow believed he held a valid interest in his post-petition contract to sell the Salt Lake City property belonging to the estate, "'[d]ebtors have an absolute duty to report whatever interests they hold in property, even if they believe their assets are worthless or are unavailable to the bankruptcy estate.'"[81] The evidence

---

[76] *Id.*

[77] *Id.* at 956-57.

[78] *Beery*, 452 B.R. at 835.

[79] *Id.*

[80] *Id.*

[81] *Brown*, 1999 WL 569052 at *5 (quoting *In re Yonikus*, 974 F.2d 901, 904 (7th Cir.1992)).

shows that Hale never reported to the trustee his attempts to sell the property[82] or the purchase agreement for property "belonging to the bankruptcy estate of Tom Hale."[83] Hale even attempted to approve the sale through an ex parte motion[84] and tried to convert his Chapter 7 bankruptcy back to a Chapter 13[85] so that he would have the ability to sell the property of the estate.[86] The evidence of Hale's actions does not support a finding that the contract was void, or that Hale thought the contract was void. Hale still failed to report it and knowingly concealed the purchase agreement from the trustee. The purchase agreement Hale concealed was for the Salt Lake property that belonged to the bankruptcy estate.[87] There was sufficient evidence for the jury to find Hale guilty of "knowingly and fraudulently conceal[ing] from creditors of the bankruptcy estate of Tom Hale and the panel trustee in bankruptcy, a purchase agreement for $395,000 for the real property at 1989 South 1000 East, Salt Lake City, Utah, belonging to the bankruptcy estate of Tom Hale."[88] Hale cannot now use "a rigid application of the principle that violations of the stay are void"[89] "as a trump card played after an unfavorable result was reached"[90] by the

---

[82] Trial Tr. vol. II, 309-10 Jan. 23, 2013, docket no. 329, filed June 3, 2013; Classified ad appearing in The Salt Lake Tribune and The Desert Morning News on Aug. 22, 2006, exhibit 12.

[83] Superseding Indictment at 3.

[84] Trial Tr. vol. II, 307-08 Jan. 23, 2013 ("Ex parte is a legal term of art which means that I am filing this motion without notice to other parties. I'm -- I'm proceeding alone."); Ex Parte Motion Approving Sale, *In re Tom Hale*, No. 05-39359, exhibit no. 18; Docket entry denying ex parte motion, *In re Tom Hale*, No. 05-39359, exhibit no. 19 ("Only Trustee is Authorized to Liquidate Assets of the Estate.").

[85] Motion to Convert to Chapter 13 Case, *In re Tom Hale*, No. 05-39359, exhibit no. 20.

[86] 11 U.S.C. § 1303 ("the debtor shall have . . . the rights and powers of a trustee"); 11 U.S.C. § 363(b)(1) ("The trustee . . . may use, sell, or lease . . . property of the estate.").

[87] *See* 11 U.S.C. § 541(a)(1), (6)-(7) ("[An] estate is comprised of all the following property, wherever located and by whomever held: . . . all legal or equitable interests of the debtor in property as of the commencement of the case. . . .Proceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case. [And] [a]ny interest in property that the estate acquires after the commencement of the case.").

[88] Superseding Indictment at 2.

[89] *Beery*, 452 B.R. at 835 (internal quotations omitted).

[90] *Calder,* 907 F.2d at 956.

jury. While this argument could be considered a substantial question on appeal, it is unlikely to result in reversal or a new trial on this criminal charge.

### Count 3 – Biological Hoax

As to Count 3, Hale raises the issue of "whether the biological weapons statute at issue in Count 3, 18 U.S.C. § 175, is constitutional."[91] Hale claims that the United States Supreme Court's grant of certiorari in *United States v. Bond*[92] "to decide whether a statute directly analogous to the one charged here is unconstitutional"[93] makes Hale's constitutional challenge a substantial question in this case. In the *Bond* case, the defendant challenged the Act under which she was charged[94] as unconstitutional in the trial court and moved to dismiss the charges against her before raising the issue again on appeal.[95] But Hale never challenged the constitutionality of 18 U.S.C. § 175 at the trial level.[96] Because Hale raises the argument for the first time on appeal, the Tenth Circuit will likely review this argument only for plain error.[97] A plain error review makes it more difficult for Hale to show that he has raised a substantial question likely to be reversed.

Hale also claims that "the Court erred when it failed to instruct the jury on two necessary elements of the charge: (i) 'peaceful purposes' and (ii) 'biological agent.'"[98] Hale suggests that

---

[91] Memo in Support at 37.

[92] *See United States v. Bond*, 681 F.3d 149, 150 (3d Cir. 2012) *cert. granted*, *Bond v. United States*, 133 S. Ct. 978 (2013).

[93] Memo in Support at 37.

[94] Chemical Weapons Convention Implementation Act, 18 U.S.C. § 229.

[95] *Bond,* 681 F.3d at 151.

[96] *United States v. Bachner*, No. 08 CR 50029, 2011 WL 1743427 (N.D. Ill. 2011) (denying motion to dismiss based on constitutional challenge to 18 U.S.C. § 175).

[97] *United States v. Cordery*, 656 F.3d 1103, 1105 (10th Cir. 2011). *But see United States v. Baker*, 98 F.3d 330, 337-38 (8th Cir. 1996), *cert. denied*, 520 U.S. 1179 (1997) (finding constitutional challenge to 18 U.S.C. § 175 waived by failure to raise it before the district court).

[98] Memo in Support at 39; *see also* Jury Instruction 44.

failure to provide a definition of "peaceful purposes" "poses a question that clearly is 'substantial' because, again, the Supreme Court has granted certiorari to resolve it."[99] As discussed previously, Hale did not raise this issue at trial. In fact, during a lengthy discussion[100] on the specific jury instruction[101] for Count 3, Hale never requested a definition of the term "peaceful purposes," leaving the jury to rely on the plain meaning of these words.

Hale argues that a definition of the term "biological agent" should have been provided to the jury.[102] This term is included in the same jury instruction as the term "peaceful purposes" that was discussed between the court and counsel before being read to the jury. Again, neither party requested that the jury receive a definition of the term.[103] Additionally, Dr. Allyn Nakashima provided expert testimony[104] describing hantavirus and stated that hantavirus is a biological agent.[105] This testimony provided the jury with the required information on the biological agent involved in this case. Because the need for a definition on these terms was never brought to the attention of the trial court, it is again more difficult for Hale to demonstrate he has raised a substantial question on appeal.

For his final argument, Hale claims that he did mail a biological agent in the form of mouse droppings and termites and therefore "he actually violated section 175 by transferring a biological agent and, thus, did not 'convey false or misleading information' to the contrary, as required for a conviction under 18 U.S.C. § 1038(a),"[106] the hoax statute under which he was

---

[99] *Id.*

[100] Trial Tr. vol. III, 623-31 Jan. 24, 2013.

[101] Jury Instruction 44.

[102] Memo in Support at 40.

[103] Trial Tr. vol. III, 623-31 Jan. 24, 2013.

[104] *Id.* at 549-57.

[105] *Id.* at 555-56.

[106] Memo in Support at 43.

charged. Although mouse droppings and termites could be considered biological agents under a broad definition, the only evidence regarding a biological agent at issue in this case was hantavirus. At trial, Hale never claimed or asked the expert if the specimens he sent qualified as biological agents. An expert testified about hantavirus[107] and Hale's note to the trustee described the substance he sent as hazmat material and hantavirus,[108] which is was not.[109] Consequently, the only relevant biological agent in this case was hantavirus. Hale's arguments that he has raised substantial issues on appeal relating to Count 3 are unpersuasive.

**ORDER**

IT IS HEREBY ORDERED that Hale's Motion for Release Pending Appeal[110] is DENIED. The issues raised on appeal are not substantial questions, or if an issue is considered a substantial question it is unlikely to result in reversal, a new trial or a lower sentence.

Signed March 26, 2014.

BY THE COURT

_____
District Judge David Nuffer

---

[107] Trial Tr. vol. III, 549-557 Jan. 24, 2013.

[108] Note contained in envelope sent to trustee, exhibit 56.

[109] Letter describing results of hantavirus testing, exhibit 60.

[110] Docket no. 401.